USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/10/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                                                       :
UTICA NATIONAL ASSURANCE COMPANY,         :

                                                              Plaintiff,   :

                           -against-                                 :       23-CV-11267 (VEC)

                                                                                :       OPINION

AMAZON.COM SERVICES, INC. *as successor*          :
*in interest to AMAZON.COM.DEDC, LLC,* &           :
AMAZON.COM.DEDC, LLC,                         :

                                                        Defendants.   :

------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

      Utica National Assurance Company ("Utica") withdrew an agreement to defend and indemnify Amazon.com Services Inc.[1] ("Amazon") in *Abidin Deljanin v. Vornado Air Rights, LLC & Amazon.Com.DEDC LLC*, No. 303855-2016 (N.Y. Sup. Ct.) ("Underlying Action"). Compl. ¶¶ 5, 12, 19, Dkt. 1–1. It had originally agreed to defend having concluded that Amazon was an additional insured on an insurance policy issued to non-party Bond Painting Company ("Bond"). *Id.* ¶¶ 16–19. Utica now seeks a declaratory judgment that it has no duty to defend or indemnify Amazon in connection with the Underlying Action. Amazon counterclaimed, seeking a declaratory judgment that it is an additional insured under Bond's policy or, alternatively, that Utica has waived the right to withdraw its defense or is estopped from withdrawing.

---

[1] The Complaint mistakenly named Amazon as "Amazon.com Services, Inc." Amazon.com Services, Inc. became Amazon.com Services LLC. Amazon Mem. at 1 n.1, Dkt. 25. Amazon.com Services LLC merged with Amazon.com.DEDC, LLC in 2019. *Id.* Amazon.com.DEDC, LLC is the surviving entity. *Id.*

1

Counterclaim ¶ 77, Dkt. 8.[2]

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Amazon Mot., Dkt. 24; Utica. Mot., Dkt. 28. For the reasons set forth below, Utica's motion for judgment on the pleadings is GRANTED, and Amazon's motion for judgment on the pleadings is DENIED.

## BACKGROUND[3]

### I. Underlying Action

Abidin Deljanin ("Deljanin") sued Amazon, Vornado Air Rights, LLC, and VNO 7 West 34th St. Owner, LLC in connection with an accident that took place on November 12, 2016. Compl. ¶¶ 5–7. Deljanin alleges that, while working for Bond, he fell from a scaffold (the "Accident") at Amazon-leased premises located at 7 West 34th Street (the "Premises"). *Id.* ¶¶ 6–7. Amazon filed a third-party complaint against Bond. *Id.* ¶ 8. Amazon alleged that, prior to the Accident, Amazon and Bond had a contract for work at the Premises, pursuant to which Bond was obligated to procure insurance for Amazon and to defend and indemnify Amazon in the Underlying Action. *Id.* ¶¶ 9–11. In 2023, Bond successfully moved for summary judgment on Amazon's cross-claim. Utica Opp. at 3–4, Dkt. 34. It argued it had no binding contract with Amazon relating to Deljanin's work at the Premises. Ex. A to Amazon Opp. at 5, Dkt. 33–1.

---

[2]   The Court will refer to paragraphs 1–58 beginning on page 1 of the pleading at Dkt. 8 as the Answer and to paragraphs 1–77 beginning on page 12 of the pleading at Dkt. 8 as the Counterclaim.

[3]   The facts are gathered from the pleadings, the parties' submissions, and the parties' briefs. All facts discussed are undisputed unless otherwise stated. The Court will refer to the relevant submissions as follows: Utica's memorandum of law in support of its motion for judgment on the pleadings, Dkt. 29, as "Utica Mem."; Amazon's memorandum in opposition to Utica's motion for judgment on the pleadings, Dkt. 33, as "Amazon Opp."; Amazon's memorandum of law in support of its motion for judgment on the pleadings, Dkt. 25, as "Amazon Mem."; and Utica's memorandum in opposition to Amazon's motion for judgment on the pleadings, Dkt. 34, as "Utica Opp."

## II.        Utica Policy and Coverage Dispute

Utica issued a general liability insurance policy to Bond covering the period from December 31, 2015, to December 31, 2016 (the "Policy"). Compl. ¶ 12. The Policy has an additional insured provision that provides, in relevant part, that all persons with which Bond has a written contract prior to loss requiring that they be named as additional insureds under the Policy will be additional insureds. *Id.* ¶ 14.

After the Accident, Amazon tendered a request for additional insured coverage to Utica. *Id.* ¶¶ 16–17. In 2019, after some back and forth between Utica and Amazon, which included Amazon providing Utica with Purchase Order # 22-0006006 ("PO 6006") for Bond's work, a prior Amazon-Bond Purchase Order containing a copy of the Terms and Conditions, and a service request detail showing that Bond was performing work on the date of the Accident, Counterclaim. ¶ 36, Utica "agree[d] to defend and indemnify" Amazon "without reservation" based on Amazon's representations that the Terms and Conditions were part of the Purchase Orders. *Id.* ¶ 38; Compl. ¶ 19. Utica's letter stated:

> We have completed our initial investigation in conjunction with a review of Bond's Commercial General Liability policy . . . , the applicable forms and endorsements and the Purchase Order/Terms & Conditions related to Bond's work on this project. Pursuant to same, Utica National recognizes Amazon's status as an additional insured under this policy.

Counterclaim ¶ 39. The letter did not raise or reserve the right to raise any defenses to coverage regarding Amazon's claim. *Id.* ¶ 40.

Although Utica attempted to assign Amazon's defense to a firm of Utica's choosing, Ex. N to the Counterclaim at 2, Dkt. 8–15, Amazon declined to agree, citing excess insurance issues, Ex. O to the Counterclaim at 8, Dkt. 8–16. At Utica's request, Amazon's counsel has provided

3

regular updates on the status of the defense. Counterclaim ¶ 46. Amazon has controlled its defense in the Underlying Action for its duration. Compl. ¶ 28.

### III.     Amazon and Bond's Course of Dealings

Bond assigned a painter to be on-site at the Premises every business day as part of its "maintenance account" with Amazon. Counterclaim. ¶ 11. Bond never performed work for Amazon at the Premises during the period in question without a Purchase Order. *Id.* ¶ 12. As is relevant here, the Terms and Conditions provide:

> **15. Defense and Indemnity.** Supplier will defend and indemnify Purchaser from any . . . liability . . . arising out of any third-party claim arising from . . . (c) any act or omission of Supplier or its Personnel related to the Project, [with an exception not relevant] . . . or (e) any personal injury, death or property damage arising out of, or incidental to, the Project, or otherwise caused by Supplier or its Personnel. Supplier's duty to defend is independent of its duty to indemnify and Supplier's obligations under this Section 15 are independent of any other obligation of Purchaser under this Purchase Order[.]
>
> **18. Insurance.** Supplier will secure and maintain insurance, including at, a minimum, a Commercial General Liability policy, providing coverage for liabilities to third parties for bodily injury (personal injury) . . . in amounts sufficient to protect Purchaser and its Affiliates in the event of such injury or damage, . . . . Supplier will, upon request of Purchaser, furnish to Purchaser certificates of insurance evidencing any such coverage, and further, if requested by Purchaser, arrange for "Amazon.com, Inc. and its Affiliates" to be named as additional insureds on all such policies providing such coverage.

*Id.* ¶ 16.

The Counterclaim alleges that Bond and Amazon had a course of dealing, pursuant to which Bond knew that the Purchase Orders and Terms and Conditions were binding agreements. *Id.* ¶ 19. On January 15, 2016, Bond emailed its insurance broker regarding the Premises, indicating that Amazon needed coverage. *Id.* ¶¶ 22–23. Bond's broker promptly issued a Certificate of Liability Insurance to Amazon stating that Amazon was an additional insured as

4

"required by written and executed contract," and a Certificate of Liability Insurance for the Premises, both of which identify the Policy at issue. *Id.* ¶¶ 24–25.

Amazon alleges that PO 6006 and the accompanying Terms and Conditions dated December 31, 2015 qualify as a "written contract" under the Policy, requiring Bond to provide insurance coverage for Amazon. *Id.* ¶¶ 14–16.

### IV. Utica's Withdrawal of Its Defense

During discovery in the Underlying Action, representatives of both Amazon and Bond testified that they had not seen the Terms and Conditions that Amazon relied on in the Tender to Utica, did not know who had prepared the Terms and Conditions, and did not know whether those Terms and Conditions were part of any Purchase Order between Amazon and Bond prior to the Accident. Compl. ¶¶ 29–32. A bookkeeper for Bond, who was responsible for invoicing Amazon, testified that she had never seen PO 6006, and that it was issued after the Accident. Ex. 7 to Utica Amended Answer at 25, Dkt. 19–9.

On September 28, 2023, Utica withdrew its agreement to defend and indemnify Amazon in the Underlying Action because there was no written contract in place prior to the Accident that required Bond to name Amazon as an additional insured. Compl. ¶ 34. Utica did not articulate any other reason for withdrawing coverage but noted that it based its decision on "[r]ecently held depositions" in the Underlying Action. Counterclaim ¶¶ 51–52. The depositions to which Utica referred had taken place more than a year earlier in July 2022. *Id*. ¶ 53.

On November 10, 2023, Amazon disputed Utica's withdrawal, asserting that Utica had waived or was estopped from withdrawing its defense and indemnification of Amazon. *Id.* ¶ 58. This lawsuit followed. *Id.* ¶ 59.

**DISCUSSION**

**I.      Legal Standard**

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Enel Green Power N. Am., Inc. v. Geronimo Energy, LLC*, No. 18-CV-5882, 2019 WL 4805659, at *6 (S.D.N.Y. Sept. 30, 2019) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).  The Court applies the same standards when reviewing a Rule 12(c) motion for judgment on the pleadings as on a 12(b)(6) motion to dismiss; it must view the pleadings in the light most favorable to the non–moving party and draw all reasonable inferences in that party's favor. *See Smith v. Wilson*, No. 96-CV-5598, 1997 WL 786928, at *1 (S.D.N.Y. Dec. 23, 1997) (citations omitted).  In deciding a Rule 12(c) motion, the court examines "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted). The Court can also consider any documents in Plaintiff's possession or of which Plaintiff had knowledge and relied on in bringing suit. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Judgment on the pleadings is "not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (citation omitted).  "[A] court may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Id.* at 302.

## II. Utica Has No Duty to Defend and Indemnify Amazon

Utica has no duty to defend and indemnify Amazon in the Underlying Action. Although Utica initially provided a defense to Amazon, Utica withdrew its defense because "there [wa]s no written contract which requires that additional insured coverage be provided by Bond for Amazon at the time of the Accident," as required by the Policy. Ex. P to the Counterclaim at 2, Dkt. 8–17. Amazon argues that the testimony on which Utica relies does not support a finding that no written contract existed prior to the Accident; and, even if there was no written contract, Utica either waived or is estopped from withdrawing its defense more than four years after it began defending Amazon without reservation.

### A. Duty to Defend

Under New York law, "the duty to defend is exceedingly broad and more expansive than the duty to indemnify." *Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002) (citation and internal quotation marks omitted). That said, the insured bears the burden of establishing that it is covered by the insurance policy. *See Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 602 (S.D.N.Y. 2016)(holding that one claiming additional insured coverage bears the burden of proving status as an additional insured); *Platek v. Town of Hamburg*, 24 N.Y.3d 688, 694 (N.Y. 2015).

#### 1. Amazon is Collaterally Estopped From Claiming There Was a Written Contract in Place Prior to the Accident

Utica only has a duty to defend Amazon if Amazon is an additional insured under the Policy. The parties agree that Amazon would be an additional insured if Amazon and Bond had "[a] written contract[] in place prior to [the Accident]." Ex. A to the Counterclaim at 23, Dkt. 8–1. Amazon asserts that it and Bond entered into a binding agreement (PO 6006 and the accompanying Terms and Conditions), which required Bond to obtain insurance coverage for

7

Amazon as an additional insured. Counterclaim ¶¶ 14–16; Exs. E and F, Dkt. 8–6, 8–7. The Counterclaim alleges that Amazon and Bond entered into a series of written agreements starting in June 2015 for Bond to provide painting services at the Premises. Counterclaim ¶ 11. At the time of the Accident, PO 6006, which was dated December 31, 2015, and revised on November 2, 2016, was purportedly in effect. Ex. E. to the Counterclaim. PO 6006 provides:

> This Purchase Order may be accepted only on the precise terms in the Purchase Order Terms & Conditions (a copy of which is attached hereto or may be obtained by contacting the purchaser)[.]

*Id.* The Terms and Conditions (which were not attached to PO 6006) state that:

> Supplier will, upon request of Purchaser, furnish to Purchaser certificates of insurance evidencing any such coverage, and . . . if requested by Purchaser, arrange for "Amazon.com, Inc. and its Affiliates" to be named as additional insureds on all such policies providing such coverage.

Ex. F to the Counterclaim at 3. A Bond employee testified affirmatively when asked whether "Amazon and Bond Painting enter[ed] into an agreement pursuant to the terms of th[e] purchase order." Ex. G to the Counterclaim at 63:20–23, 64:11, Dkt. 8–8. Amazon contends that Bond knew that it was contractually obligated to name Amazon as an additional insured, as evidenced by the email that Bond sent to Bond's insurance broker on January 15, 2016, asking that Amazon be added "asap" to the Policy. Ex. I to the Counterclaim at 1, Dkt. 8–10. Bond's broker issued both a Certificate of Liability Insurance for Amazon and for 7 West 34th Street LLC that same day. Exs. J, K to the Counterclaim, Dkt. 8–11, 8–12.

Amazon is, however, collaterally estopped from litigating the question whether there was a written contract between it and Bond prior to the Accident. In the Underlying Action, Bond successfully moved for summary judgment on Amazon's claim for indemnification; the state court held that Bond had established "that there was no written contract between the parties governing indemnification with respect to [Deljanin's] accident." Ex. A to Amazon Opp. at 6.

In reaching that conclusion, the state court noted that Bond had proved that it prepared a written invoice dated November 7, 2016, for services that it expected to provide to Amazon; Bond did not, however, receive a purchase order when the estimate was accepted as was customary. *Id.* at 5. Bond's controller testified that there was no purchase order that corresponded to the work Deljanin performed on the day of the Accident. *Id.* Bond's bookkeeper testified that the November 7th invoice was initially rejected by Amazon because it did not contain a purchase order; subsequently, Amazon told her to reference PO 6006 in connection with the invoice. *Id.* at 5–6. PO 6006 has an order date of December 31, 2015, and revised date of November 2, 2016, both of which pre-date Bond's November 7th estimate. *Id.* at 6. Amazon argued to the state court that there was a contract in place, relying on the "Terms and Conditions" purportedly attached to its purchase orders. The state court rejected that argument because the Terms and Conditions document had never been authenticated, as Amazon's representative testified that he had never seen the "Terms and Conditions" before. *Id.* For those reasons, the state court held that Amazon failed to raise a triable issue of fact that it had a written contract in place with Bond prior to the Accident. *Id.*

Collateral estoppel bars a party from re-litigating in a second proceeding a factual or legal issue that has already been litigated and decided against the party in a prior proceeding. *Ferring B.V. v. Serenity Pharms., LLC*, 391 F. Supp. 3d 265, 281–82 (S.D.N.Y. 2019) (citation omitted). Collateral estoppel attaches when (1) an identical issue was raised in a previous proceeding against the party; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) resolution of the issue was necessary to support a valid and final judgment on the merits. *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018) (citations omitted). Courts have "broad

9

discretion" to determine whether collateral estoppel applies. *See Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 898 F.3d 232, 241 (2d Cir. 2018) (citing *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331 (1979)).

Amazon asserts that the decision in the Underlying Action granting Bond summary judgment on the indemnification claim has no preclusive effect, arguing that "an interlocutory judgment . . . is never res adjudicata." Amazon Opp. at 11 (citing *Brown v. Cleveland Tr. Co.*, 233 N.Y. 399, 405–06 (1922)). Amazon contends that the state court erred by ignoring evidence that Bond complied with the Purchase Order as a written contract, did not consider the course of dealing between Bond and Amazon, relied on "snippets of testimony," and based its decision on "a curable evidentiary issue (authenticity of a document)." *Id.* at 12. Amazon's misguided arguments and citations to century–old caselaw overlook Second Circuit cases which have uniformly held that an interlocutory decision can be given preclusive effect. *See Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir. 1964) (cleaned up) ("collateral estoppel does not require a judgment which ends the litigation and leaves nothing for the court to do but execute a judgment, but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated"); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 366 (2d Cir. 1992), *abrogated on other grounds as noted in Yung v. Lee,* 432 F.3d 142, 147 (2d Cir. 2005) (cleaned up) (citation omitted) ("Whether a judgment that is not final within the meaning of §1291 ought nevertheless be considered final in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review."); *EDP Med. Computer Sys., Inc. v. United States,* 480 F.3d 621, 626 (2d Cir. 2007) (holding that a judgment should be given collateral estoppel effect when it is a "firm and stable one, the 'last word' of the rendering

10

court"). *See also Harriman Ests. Dev. Corp. v. Gen. Accident Ins. Co.*, 765 N.Y.S.2d 338 (1st Dep't 2003) (holding that "it is appropriate to collaterally estop" the plaintiff from asserting coverage in a suit, as an interlocutory summary judgment decision found that an accident did not arise out of a subcontractor's work for purposes on indemnification). None of Amazon's arguments carries any weight or prevents collateral estoppel from applying. Amazon claims that the decision in the Underlying Action "is based on a different factual record," but it failed to identify any salient differences. Amazon Opp. at 11. Further, Amazon argues that the state court decided the issue "based on a curable evidentiary issue" — whether the "Terms & Conditions" document was authentic and was attached to the PO 6006 — that could be resolved by stipulation or by discovery in this case. *Id.* at 12. Amazon, however, filed its motion for judgment on the pleadings first and entirely failed to authenticate the document. Whether a written contract was in place prior to the Accident was fully litigated and decided; Amazon had a full and fair opportunity to litigate the issue; and the state court based its decision to dismiss Amazon's contractual indemnification claim on this issue.

In short, Amazon is collaterally estopped from claiming that there was a written contact in place prior to the Accident. Because there was no written contract between Amazon and Bond in place prior to the Accident, Amazon is not an additional insured under the Policy.

### 2. Utica Did Not Waive Its Defense

Amazon maintains that, regardless of its status as an additional insured, Utica cannot withdraw its defense because it waived any defenses to coverage. New York insurance law defines waiver as "a voluntary and intentional relinquishment of a known right." *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698 (1980). Waiver may be found "where there is direct or circumstantial proof that the insurer intended to abandon the defense." *State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (1991). Although Utica initially disclaimed coverage,

11

Amazon asserts that Utica reversed its position and agreed to defend Amazon "without reservation." Amazon Mem. at 17, Dkt. 25.

Utica did not waive its defense; "waiver is simply inapplicable . . . where the issue is the existence or non-existence of coverage." *Hunt Constr. Grp., Inc. v. Berkley Assurance Co.*, 503 F. Supp. 3d 106, 114 (S.D.N.Y. 2020) (citation omitted). *See also Hyperion Med. P.C. v. Trinet HR III, Inc.*, 140 N.Y.S.3d 207, 209 (1st Dep't 2021) ("An insurer can never waive a defense that the claim is not within the scope of coverage[.]"). Amazon cites *AMRO Realty Corp.*, 936 F.2d 1420, for the proposition that, under New York law, an insurer waives a defense where it has sufficient knowledge of the circumstances concerning an unasserted defense. Amazon Mem. at 17. That case is inapposite, however, as the holding was that the insurer waived the right to assert late-notice, which is a waivable defense; the existence of coverage is not waivable. *See AMRO Realty Corp.*, 936 F.2d at 1432–33. *See also Hunt Constr. Grp., Inc.*, 503 F. Supp. 3d at 114.

### 3. Utica Is Not Estopped From Withdrawing Its Defense

Amazon also contends that Utica is estopped from withdrawing its defense "no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay." Amazon Mem. at 17 (citing *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002). Amazon argues that "prejudice to an insured may be presumed where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense." *Id.* at 18 (citing *Bluestein & Sander*, 276 F.3d at 122). Amazon claims that Utica has had the relevant documentation, *i.e.*, PO 6006, since at least October 2017, six years before Utica withdrew its

defense. *Id.* at 19. Further, Utica's basis for disclaiming coverage is information disclosed at the depositions in the Underlying Action, which Amazon argues occurred in July 2022, more than a year before Utica withdrew its defense. *Id.* at 20.

Amazon argues that it is prejudiced by Utica's untimely withdrawal in several ways. Specifically, Amazon asserts that it relied on Utica's defense even though Utica was also defending Bond, whose interests do not align with Amazon. *id.* at 21; Amazon provided regular reports to Utica regarding the Underlying Action, and it would not have provided confidential information to Utica but for the fact that Utica was providing a defense, *id.* at 22; and Amazon cannot engage in discovery regarding its status as an additional insured right before an upcoming trial,[4] *id.* Aside from taking issue with the fact that discovery is over in the Underlying Action, Amazon has not articulated how its actual defense of the Underlying Action has been compromised.

Utica is not estopped from disclaiming coverage despite the fact that it has defended Amazon for four years and could have been more timely in withdrawing its defense. An insurance company is estopped from disclaiming coverage where the insured "relied to its detriment on that coverage and was prejudiced by the delay of the insurance company in denying or disclaiming coverage based on the loss of the right to control its own defense." *Lancer Indem. Co. v. Peerless Ins. Co.*, 172 N.Y.S.3d 643 (2nd Dep't 2022) (citation omitted). Thus, an insurer "may be precluded from denying coverage upon proof that the insurer by its conduct, otherwise lulled [the insured] into sleeping on its rights under the insurance contract." *Cnty. of Suffolk v. Ironshore Indem., Inc.*, 134 N.Y.S.3d 372 (2nd Dep't 2020) (citation omitted). The pertinent

---

[4] Trial in the Underlying Action is scheduled to start on May 5, 2025. *Deljanin*, No. 303855-2016 (N.Y. Sup. Ct.). Amazon does not complain that its ability to take discovery relevant to its liability *vel non* to Deljanin was in any way compromised because Utica was providing a defense.

inquiry is who controlled the defense; estoppel generally does not apply in cases in which the insured controls its own defense.  *See Great Am. E&S Ins. Co. v. Hartford Fire Ins. Co.*, No. 09-CV-10010, 2012 WL 3186086 at *10 (S.D.N.Y. Aug. 3, 2012).  *See also Bluestein & Sander*, 276 F.3d at 122 (citation omitted) (noting that prejudice may be presumed where the insured loses the "right to control its own defense").  Therefore, to estop a late disclaimer of coverage, an insured must establish actual prejudice by showing that "the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered."  *Yoda, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 931 N.Y.S.2d 18 (1st Dep't 2011).

   Amazon has not shown that Utica controlled Amazon's defense or that Amazon suffered any other form of prejudice.  Amazon undertook its own defense from the start and has proffered no evidence that Utica ever interfered with that defense, let alone that Utica's actions precluded Amazon from altering the character or strategy of litigating the Underlying Action.  Relying on *Bluestein & Sander*, Amazon argues that it is entitled to a presumption of prejudice because Utica defended it "without reservation" for over four years.  Amazon Opp. at 4.  In *Bluestein & Sander*, because the insurer's designated counsel controlled the insured's defense for more than two years, prejudice was presumed.  276 F.3d at 122–23.  The facts here are different.  Although Utica initially sought to appoint its own counsel to defend Amazon, Ex. N to the Counterclaim, Amazon did not agree due to excess insurance issues.  Ex. O to the Counterclaim.  Utica agreed to pay 50 percent of Amazon's cost of defense, Counterclaim ¶ 54, and counsel for Amazon has retained control of Amazon's defense throughout, Compl. ¶ 28.  Although Utica covered half the cost of Amazon's legal bills, there are no allegations or evidence that Utica ever influenced any decisions regarding Amazon's defense in the Underlying Action.  Amazon claims that Utica required regular reports on the status of the Underlying Action and that Amazon is prejudiced

because it provided confidential information that it would not have provided but for the fact that Utica was providing a defense. Amazon does not disclose what confidential information was provided or provide any facts from which the Court could reasonably infer that it was harmed by sharing such information. Counterclaim ¶¶ 46–48. *See Great Am. E&S Ins. Co.*, 2012 WL 3186086 at *9–10 (citing *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 807 N.Y.S.2d 62, 66 (1st Dep't 2006) ("[T]he First Department has explicitly held that the mere temporary loss of control of the handling of one's case does not create a presumption of detrimental reliance[.]").

There are no allegations in the Counterclaim that reasonably allow the Court to infer that Utica lulled Amazon into sleeping on its rights. The Court has considered all other arguments and has deemed them to be without merit. Amazon has failed to show that it is in any different position—let alone a worse position—than it would have been had Utica maintained its initial denial of coverage. As such, Utica is not estopped from denying coverage to Amazon based on the lack of a written contract.

## CONCLUSION

For the foregoing reasons, Utica's motion for judgment on the pleadings is GRANTED, and Amazon's motion for judgment on the pleadings is DENIED. Utica has no obligation to defend or indemnify Amazon in the Underlying Action. The Clerk of Court is respectfully directed to terminate the open motions at docket entries 24, 28–29 and to close the case.

**SO ORDERED.**

Date:  March 10, 2025                  **VALERIE CAPRONI**
       New York, New York            **United States District Judge**